UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DANIEL RAMSEY,
CDCR #K-99536

Plaintiff,

v.

RONALD ZHANG, MD,

Defendant.

Case No.:  20cv1076-AJB (RBB)

**ORDER:**

**(1)  DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**(2)  GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and**

**(3)  DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff Daniel Ramsey is a state prisoner proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action claiming deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  (ECF No. 35.)  Plaintiff alleges he was recommended for surgery on his back, neck and shoulder at Kern Valley State Prison in 2012, but after he was transferred to the Richard J. Donovan Correctional Facility ("RJD") in 2014 surgery was delayed six years because his treating physician Defendant Dr. Zhang repeatedly refused to order an MRI to determine whether surgery was necessary or otherwise follow-up on the 2012 surgical recommendation.  (*Id*. at 2-4.)

Currently pending are cross-motions for summary judgment. (ECF Nos. 51, 56.) Plaintiff contends: (1) his administrative remedies were exhausted when he received a final response to his August 1, 2019, healthcare grievance, and (2) it is undisputed that he had a serious medical need for surgery which Dr. Zhang knew of and repeatedly failed to address. (ECF No. 51 at 1-7.) Dr. Zhang contends: (1) Plaintiff failed to exhaust administrative remedies because his healthcare grievance involved reduction of pain medication and did not include a request for an MRI, surgery or follow-up to the 2012 surgical recommendation, (2) there is no triable issue that Dr. Zhang was deliberately indifferent to a serious need for surgery because Plaintiff's claim merely involves a difference of opinion regarding the proper course of medical care, and (3) he is entitled to qualified immunity. (ECF No. 56 at 14-20.) Plaintiff has filed an Opposition (ECF No. 60) to which Defendant has filed a Reply. (ECF No. 63.)

Plaintiff has also filed a motion for appointment of counsel. (ECF No. 59.) He states he had surgery on July 13, 2021, and is recovering at RJD but unable to effectively use his right hand to write or type and unable to draft any necessary legal documents without the assistance of counsel. (*Id*. at 1, 3.)

For the following reasons, the Court **DENIES** Plaintiff's motion for summary judgment, **DENIES** his motion for appointment of counsel, **GRANTS** Defendant's motion for summary judgment, and enters judgment in favor of Defendant Dr. Zhang.[1]

## I.    Procedural Background

Plaintiff initiated this action by filing a Complaint on June 11, 2020, naming as Defendants his RJD primary care physician Dr. Zhang and S. Gates, Chief of the California Department of Corrections and Rehabilitation ("CDCR") Office of Medical Appeals. (ECF No. 1.) Plaintiff alleged Dr. Zhang discontinued his daily morphine prescription he

---

[1]  Although this motion was referred to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. CivLR 72.1(d).

had for five years based on his belief Plaintiff had stopped taking it after none was found in his system but without determining the severity of his pain, Chief Gates wrongfully denied his medical appeal of that decision, and both Defendants delayed his 2012 surgical order. (*Id*. at 2-4.) On June 23, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis* and screened the Complaint pursuant to the provisions of 28 U.S.C. §§ 1915(e)(2) & 1915A(b). (ECF No. 4.) The Court found the Complaint failed to state an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs because he alleged he was informed by Dr. Zhang when his morphine was replaced that he should immediately inform him during their next visit if the new medication was not effective, and when Plaintiff returned for his next visit he was informed that Dr. Zhang was no longer his primary care physician and to take his request up with his new primary care physician. (*Id*. at 8-9.) The Court found the allegation that Chief Gates denied Plaintiff's medical appeal, without more, did not state a claim. (*Id*. at 10.) Plaintiff was granted leave to amend and cautioned that any claims not re-alleged and any Defendants not re-named would be considered waived. (*Id*. at 11.)

Plaintiff filed a First Amended Complaint on July 7, 2020. (ECF No. 11.) The First Amended Complaint contained few specific factual allegations but claimed Plaintiff had been "promised and assured medical surgery for neck, spine and left shoulder for the past eight (8) years" by Dr. Zhang "and his successors," that his condition had become progressively worse in that time, and that other inmates of other races with similar medical problems had received surgery within six months. (*Id*. at 3.) The Court screened the First Amended Complaint and dismissed it with leave to amend for failure to state a claim due to the lack of specific factual allegations. (ECF No. 12 at 7-9.)

Plaintiff filed a Second Amended Complaint on October 8, 2020, naming Dr. Zhang as the only Defendant and alleging he "failed to follow up on my Spinal, Neck Surgery upon my arrival to RJD-State Prison by refusing to order me a MRI which caused my medical condition to become progressively worse over a five year time period without surgery." (ECF No. 13 at 2.) The Court screened the Second Amended Complaint, found

20cv1076-AJB (RBB)

that Chief Gates had been abandoned as a Defendant and dismissed him from this action, found the Eighth Amendment deliberate indifference claim against Dr. Zhang survived screening, and ordered service as to Dr. Zhang. (ECF No. 14 at 4.) Dr. Zhang filed an Answer to the Second Amended Complaint on January 19, 2021. (ECF No. 18.)

On March 3, 2021, Plaintiff sought to add as an exhibit to the Second Amended Complaint a copy of CDCR 602 Health Care Grievance No. 19001192 to allege exhaustion of administrative remedies. (ECF No. 31.) Defendant did not object to the exhibit but requested it be attached to an amended pleading. (ECF No. 33.) The Court directed the Clerk to merge the Second Amended Complaint with CDCR Form 602 Health Care Grievance No. 19001192 attached as exhibit F, and for the merged document to serve as a Third Amended Complaint, the operative pleading in this action. (ECF Nos. 34-35.)

Plaintiff filed the instant motion for summary judgment on June 25, 2021. (ECF No. 51.) Defendant filed an opposition and a cross-motion for summary judgment on August 19, 2021. (ECF No. 56.) Plaintiff filed a motion for appointment of counsel on September 8, 2021, and an opposition to Defendant's cross-motion on September 13, 2021. (ECF Nos. 59-60.) Defendant filed a Reply on October 7, 2021. (ECF No. 63.)

**II.    Plaintiff's Allegations Against Defendant Dr. Zhang**

Plaintiff alleges in the Third Amended Complaint that Defendant Dr. Zhang "failed to follow up on my Spinal, Neck Surgery upon my arrival to RJD-State Prison by refusing to order me a MRI which caused my medical condition to become progressively worse over a five year time period without surgery!" (ECF No. 35 at 2.) He contends that in 2012 surgery was recommended to correct a condition "which has kept me confined in a wheelchair . . . [but] no surgery has ever been performed on me to correct my painful medical condition as promised!" (*Id*. at 3.) He alleges:

> Between 2014 through 2019, the defendant Dr. Zhang-MD verbally informed
> me on countless occasions that he personally felt that I didn't need any surgery
> to correct my neck, spine, and shoulder [as] opposed to Dr. Goyal, Dr. Casian,
> Dr. Santos, Dr. Waters, and the Chief Medical Doctor named Dr. Steven
> Roberts who all five strongly believed that I did in fact need corrective surgery

for my neck, spine and shoulder.  Such recommendations all begin in (2012) til 2020 without me ever actually receiving any surgery while remaining in excruciating pain for the past (7) years awaiting such surgery.

(*Id*.)

Plaintiff states he exhausted his administrative remedies by filing a prison medical appeal "on this very same issue," which was denied at the final level without any action taken.  (*Id*.)  Attached as exhibits A and B are orders from Drs. Casian, Santos and Roberts "all concurring that [I] need surgery for my neck, spine, and shoulder that should have been done by Defendant Dr. Zhang six years ago!"  (*Id*.)  He attaches as exhibit C "my MRI X-Ray Report dated August 4, 2020 from Dr. R. Waters who concluded in his medical findings that my injur[y] has a Mass Effect Upon My Spinal Cord which is causing me daily excruciating pain and suffering as well as limited movement!"  (*Id*. at 3-4.)  Attached as exhibit D is "my medical examination report dated May 5, 2020 by Medical Surgeon named Dr. Frank Yoo from Tri-city Medical Center in Oceanside California who recommended that I undergo an MRI before conducting surgery on my spinal cord."  (*Id*. at 4.)  Attached as exhibits E and F are copies of his CDCR 602 Health Care Grievance No. 19001192 and its final level response.  (*Id*. at 20-24.)  Finally, Plaintiff alleges:

Had the defendant Dr. Ronald Zhang-MD referred me for a MRI six years ago back in (2014), then I could have long since had my surgery completed and on my way to full recovery without having to endure six years of pain and suffering.  However, Dr. Zhang repeatedly ignored, delayed, and denied me the right to medical care to have a MRI performed on me for six full years which forced me to endure physical and emotional pain till this very day in which I am now finally scheduled for surgery within the next few weeks!  If called upon to testify in the court [of] law in this civil case, then Dr. Casian, Dr. Roberts, Dr. Silva, Dr. Goyal, Dr. Yoo, and Dr. Waters will all be willing to testify under oath that I the plaintiff Daniel Ramsey should have been medically properly examined by Dr. Zhang-MD for an MRI upon my arrival to the RJD-Correctional Facility 6 years ago!

(*Id*.)

Plaintiff requests money damages and an injunction for "proper medical treatment in the future including pain medication as originally prescribed to me."  (*Id*. at 7.)  As noted, he had surgery on July 13, 2021.  (ECF No. 59 at 1.)

### III.    Exhaustion of Administrative Remedies

Plaintiff and Defendant both move for summary judgment with respect to exhaustion of administrative remedies.  Plaintiff contends he exhausted administrative remedies when he filed CDCR 602 Health Care Grievance No. 19001192 on August 1, 2019, which states:

> On 7-31-19 I seen my PCP for evaluation as standard practices for ADA DPW Chronic Pain Management Inmates.  However, the PCP told me that he was lowering my pain medication due to the Medical Board expense.  By these actions of reducing my pain medication it impairs my mobility and limited me on liberty.  This misdiagnosis, under prescribing, negligent treatment is a unlicensed practice and unprofessional conduct.  Theirs [sic] no justification for removing or reducing medication when I have permanent spine injuries that cause excruciating pain as well as a shoulder injury that is also painful.  I have problems sleeping and thinking straight due to his actions.  This violates my Eighth Amendment rights.  I would like my medication to be return[ed] to its original dosage (30mx2day) A.S.A.P.

(ECF No. 56-1 at 125-26.)

Defendant argues that because the grievance involved the tapering and eventual discontinuation of Plaintiff's morphine prescription by Dr. Zhang it adequately exhausted a claim raised in the original Complaint regarding discontinuation of morphine, but that claim has been abandoned because it was not raised in any further version of the Complaint. (ECF No. 56 at 14-15.)  Defendant argues that because the grievance lacks any reference to a request for an MRI or surgery, it did not exhaust administrative remedies with respect to Plaintiff's claim that Dr. Zhang failed to timely order an MRI, refer him for surgery or otherwise follow-up on the 2012 surgical recommendation.  (*Id*.)

Plaintiff replies that although his health care grievance only challenged his pain medication when it was submitted, it was amended to include the need for surgery when it was addressed at the final level of review, thereby exhausting that claim as well.  (ECF No. 60 at 1-2, 8.)  Defendant replies that a when final level disposition addresses a new issue not raised in the original grievance the exhaustion requirement is satisfied for the new issue, but any newly exhausted issue in the final level disposition here involved actions taken after Dr. Zhang was no longer Plaintiff's primary care physician.  (ECF No. 63 at 2.)

20cv1076-AJB (RBB)

## A.     Legal Standards

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."  *Ross v. Blake*, 578 U.S. 632, 635 (2016), quoting 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims."  *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).  "[P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court.  When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved."  *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006). The exhaustion requirement is based on an important policy concern which "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).

"[P]risoners are obligated to navigate all a prison's administrative review process 'regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.'"  *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005), quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001).  Inmates are not required to exhaust administrative remedies when circumstances render administrative remedies effectively unavailable.  *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Ross*, 578 U.S. at 648 ("The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'")  There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Ross*, 578 U.S. at 643.  They arise when: (1) the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the process is "so opaque that it becomes, practically speaking,

incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

Once a defendant shows "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy . . . the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). Any justifiable inferences drawn from the facts in the record are viewed in the light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"Grievance issues [within the CDCR system] are separated into two categories: custody issues and healthcare issues." *Calderon v. Koenig*, No. 19cv7949-HSG, 2021 WL 3675210, at *1 (N.D. Cal. Aug. 19, 2021). To grieve a healthcare issue, a prisoner is required to submit a CDCR 602 HC form, referred to as a health care grievance, that "describe[s] the specific complaint that relates to their health care which they believe has a material adverse effect upon their health and welfare." Cal. Code Regs., tit. 15 § 3999.227(a) (2019). Healthcare grievances are subject to two levels of review: an institutional level of review and a headquarters' level of review. Cal. Code Regs., tit. 15 § 3999.226(a)(1) (2019). "Healthcare grievances are subject to a headquarters' level disposition before administrative remedies are deemed exhausted." Cal. Code Regs., tit. 15 § 3999.226(g) (2019).

## B. Analysis

Defendant presents the declaration of R. Hart, the Chief of the Health Care Correspondence and Appeals Branch of the Policy and Risk Management Services Division of California Correctional Health Care Services, which provides oversight for medical, dental and mental health care appeals and grievances for inmates of the CDCR. (Hart Decl. ¶ 1, ECF No. 56-4 at 1.) According to CDCR records, the only grievances Plaintiff filed which requested back surgery were numbered 12033358 and 12033359 filed

in July 2012, while he was housed at Kern Valley State Prison (Hart Decl. ¶ 8(a), ECF No. 56-4 at 3), referenced in the Hart declaration as exhibits 3-4.  (ECF No. 56-1 at 99-120.) No grievance requesting an MRI was ever filed, although Plaintiff filed grievance number 13027151 in April 2013 while incarcerated at High Desert State Prison requesting a copy of his 2012 MRI results.  (Hart Decl. ¶ 8(b), ECF No. 56-4 at 4.)

Hart states that while at RJD Plaintiff filed grievance number 19001192 stating he had a disagreement with his medical provider over medication for pain management.  (Hart Decl. ¶ 8(c), ECF No. 56-4 at 4.)  That grievance received an institutional level response on September 30, 2019, indicating no intervention would be taken, and was denied at the headquarters' level of review on December 17, 2019, also with an indication no intervention would be taken.  (ECF No. 56-1 at 122-32.)  Plaintiff filed grievance number 20000404 on March 13, 2020, complaining that the discontinuation of his morphine was an arbitrary response to the opioid crisis in the United States, which was rejected as duplicative of 19001192 and never resubmitted.  (Hart Decl. ¶ 8(d), ECF No. 56-4 at 4; ECF No. 56-1 at 134-43.)  Finally, Plaintiff submitted grievance number 20000490 complaining that morphine prescriptions had been unfairly discontinued for many inmates, including himself, which was denied at the institutional and headquarters' levels.  (Hart Decl. ¶ 8(e), ECF No. 56-4 at 4; ECF No. 56-2 at 3-22.)

Thus, Defendant has presented evidence in support of summary judgment that Plaintiff did not file a healthcare grievance objecting to Dr. Zhang's failure to order an MRI or refer him for surgery.  Plaintiff argues in opposition that although his CDCR 602 Health Care Grievance No. 19001192 only complained about the tapering of morphine, his claim against Dr. Zhang in the Third Amended Complaint was exhausted by the headquarters' level disposition, which states, with underlining by Plaintiff:

> Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed.  These records indicate:
>
> Health care staff, utilizing clinical expertise within the scope of their licensure, is responsible for determining if a health care grievance

20cv1076-AJB (RBB)

warrants expedited processing, not the grievant.   Your health care grievance was identified by licensed clinical staff to not meet the criteria for expedited processing per California Code of Regulations, Title 15. Section 3999.228(b)(2) and/or 3999.230(b)(1)(B).

You alleged <u>negligent care; however, your allegation is refuted by professional health care staff familiar with your health care history, as well as a review of your health record</u>.   Though you may not have received the treatment(s) of your choice, there is no indication you were not provided medically or clinically necessary health care services due to any budgetary or financial constraints as you alleged.

You are enrolled in the Chronic Care Program, where your medical conditions and medication needs are closely monitored.   Progress notes indicate there is a plan of care in place and the primary care provider has discussed the plan of care with you.

On October 15, 2019, the primary care provider documented you were informed morphine was discontinued due to an abnormal drug screening; you agreed to a trial of Mobic for pain management.

On November 7, 2019, the primary care provider documented your pain was not affecting your activities of daily living; you indicated you were self-medicating; you were not a candidate for chronic opioid therapy; a referral for physical therapy (PT) was submitted; <u>you were advised an electromyography or neurosurgery consultation would be considered after PT evaluation</u>.

Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider.   If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

California Correctional Health Care Services health care providers are trained to treat multiple types of pain in a systematic, step-wise approach based on comprehensive assessment and planning, as outlined in the CCHCS Care Guide: Pain Management.   Complete pain relief is not a realistic goal.   <u>The goal is to reduce pain and improve function while avoiding significant side effects and risks associated with stronger pain medications or surgery</u>.   The assessment and monitoring of your pain is an ongoing process.

Many patients with chronic pain are able to manage adequately without medications and can function at a near-normal level. Patient-specific factors such as comorbidities, co-medications, previous history, and risk/benefit assessment are considered when making drug selection. Opioids are not the preferred treatment for chronic pain. Non-pharmacologic therapies and non-opioid therapies are preferred treatment for chronic pain. The guidelines for opioid therapy outlined in the CCHCS Care Guide: Pain Management Part 3-Opioid Therapy, are based on the 2016 Centers for Disease Control and Prevention (CDC) Guidelines for Prescribing Opioids.

Per the Health Care Department Operations Manual, Section 3.1.1, Complete Care Model, California Correctional Health Care Services ". . . shall manage and deliver medically necessary health care services to the patient population." The Complete Care Model is based on the industry standard known as the Patient-Centered Health Home. The Complete Care Model "shall serve as the foundation for California Correctional Health Care Services health care services delivery." All California Correctional Health Care Services policies and procedures are designed to meet the minimum level of care necessary to provide constitutionally adequate medical care to patients in the California Department of Corrections and Rehabilitation.

There is no indication your care has not been provided pursuant to the rules and regulations governing the management and delivery of medically or clinically necessary health care services. Patients shall be accorded impartial (equal, unbiased) access to treatment or accommodations that are determined to be medically or clinically indicated, based on the patient's individual presentation, history, and exam findings, in accordance with appropriate policies and procedures. Treatment determined to be medically or clinically indicated for another patient may not be determined to be appropriate for you; the does not constitute a violation of your right to impartial access to medically or clinically necessary health care.

It is not in the purview of grievants to dictate administrative actions in regard to the health care grievance process. Your health care grievance was processed per California Code of Regulations, Title 15, Chapter 2, Subchapter 2, Article 5.

While the heath care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may

affect your care.  However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures.  Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

This decision exhausts your administrative remedies.

(ECF No. 60 at 7-9.)

Plaintiff argues the underlined sections show that the headquarters' level decision amended his grievance "by addressing a whole new issue that neurosurgery would be considered on treating neck, spine, and shoulder after he received PT evaluation." (*Id*. at 1.)  Defendant replies that the underlined reference is to Dr. Goyal's November 7, 2019, instruction for Plaintiff to complete physical therapy before reconsidering whether an electromyography and/or a neurosurgery consultation is necessary.  (ECF No. 63 at 2.)  Dr. Goyal's November 7, 2019, progress notes state that although the 2012 surgery evaluation generated a recommendation for surgery, surgery was denied, and "it would be possible to maybe repeat request for NSGY eval once patient completes PT course or consider EMG to document neuropathic effects on the UE." (ECF No. 56-2 at 80.)  Prior to that visit, on October 15, 2019, Dr. Goyal's progress notes state:

> MRI from 2012 showed herniated disks from C6-C7 at the time the patient was evaluated by neurosurgery who recommended anterior discectomy and possible fusion at C5-C6 and C6-C7.  The patient was lost to follow-up because he reports that he had been controlled on pain medication. The patient was discontinued off his chronic opioid therapy this July.  He reports an increase in pain and would like to be reevaluated for possible surgery.  He has confounding factors of shoulder pain that correlates to also shoulder pathology.  The patient should be valid [sic] by neurosurgery to see if he is a candidate for neck surgery.

(*Id*. at 82.)

Dr. Zhang states in his declaration that he was Plaintiff's primary care physician from October 17, 2014, until September 1, 2019, when he was assigned to a different

facility at RJD.  (*See* Zhang Decl. ¶¶ 1, 4; ECF No. 56-5 at 1.)  He argues he stopped being Plaintiff's primary care physician over two months before Dr. Goyal's November 7, 2019, recommendation that an EMG or a neurosurgery consultation would be considered after physical therapy due to a report of increased pain from the discontinuation of morphine. (ECF No. 63 at 2.)  Dr. Zhang contends that because he was not involved in Dr. Goyal's evaluation, any newly exhausted issue involving the need for a follow-up on the 2012 surgical referral has nothing to do with any claim against him and does not constitute exhaustion of administrative remedies as to the claim in the Third Amended Complaint he failed to order an MRI or refer Plaintiff for surgery.  (*Id*.)

Accordingly, a prison administrative record was made regarding the fact that there was a dispute between Plaintiff and Dr. Zhang whether Plaintiff's morphine prescription was properly discontinued, but there is no administrative record addressing allegations that Dr. Zhang refused to refer Plaintiff for an MRI or surgery or otherwise follow-up on the 2012 surgical recommendation.  To the extent Plaintiff argues that the references in the headquarters' level response to his medical history and records should have placed the CDCR on notice he was complaining that he should have been referred for surgery or an MRI by Dr. Zhang while he was his primary care physician from 2014 to 2019, there is no triable issue of fact that Plaintiff failed to submit a grievance which, at any level of review, included or addressed his allegations in the Third Amended Complaint that Dr. Zhang failed to refer him for an MRI or surgery or otherwise follow-up on the 2012 surgical recommendation.  At best, a new issue was exhausted by the headquarters' level disposition regarding whether Plaintiff should be reevaluated for surgery in light of his report of increased pain following the discontinuation of morphine.  Plaintiff's failure to file a grievance containing his allegations that Dr. Zhang failed to follow-up on the 2012 surgical recommendation while he was Plaintiff's primary care physician from 2014-2019 has resulted in no administrative record regarding that claim.  *See Woodford*, 548 U.S. at 94-95 (administrative law creates "a fair and full opportunity to adjudicate [a prisoner's] claims . . . by requiring proper exhaustion of administrative remedies, which means using

all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.)") (quote marks omitted); *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"), quoting *Jones*, 549 U.S. at 218.

Defendant has carried his burden on summary judgment by coming forward with evidence showing there is no genuine issue of material fact in dispute that Plaintiff failed to file a healthcare grievance which included his allegations against Dr. Zhang raised in the Third Amended Complaint. The burden has now shifted to Plaintiff "to come forward with evidence showing there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Any justifiable inferences drawn from the facts in the record in this regard will be viewed in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255.

Plaintiff stated in his deposition testimony that the August 1, 2019, CDCR 602 Health Care Grievance No. 19001192 was the first grievance he filed against Dr. Zhang. (ECF No. 56-1 at 68.) It is undisputed that Dr. Zhang stopped being Plaintiff's primary care physician one month later, on September 1, 2019, when he was assigned to a new facility at RJD. (Zhang Decl. ¶ 4; ECF No. 56-5 at 2-3.) Plaintiff states in his summary judgment motion that: "On many occasion[s], during medical exams (as required from chronic pain management program) the plaintiff been [sic] informed by the defendant, that he did not need surgery." (ECF No. 51 at 4.) He states in his declaration that during their July 31, 2019, visit, in response to Dr. Zhang informing him that his morphine dosage would be lowered: "I ask him can I at least get a follow-up with the neurosurgeon for my spine because it's a known fact that a person with bulging disk could have a degenerative disk disease over time. And it's been to long I've been waiting on surgery. He told me I was ok and didn't need it. I then said to him, I will be writing you up for negligent treatment (for not giving me treatment/misdiagnosis)." (*Id*. at 22.) Plaintiff submitted a Health Care Services Request form on August 6, 2019, stating that since the adjustment of his pain medication "my pain level has increased and I am not getting sleep nor am I able to move

or get out [of] my bed without a paralyzing feeling in my spine, neck, and shoulder with stiffness and muscle weakness.  Hard time sleeping."  (*Id.* at 27.)  Plaintiff has come forward with no evidence that he made good on his threat to write Dr. Zhang up following his denial of surgery during their July 31, 2019, visit, other than to complain about the reduction in morphine, and has failed to show he filed any inmate healthcare grievance against Dr. Zhang alleging a failure to refer him for surgery, order an MRI, or otherwise follow-up on the 2012 surgery recommendation.  Plaintiff has not shown the grievance procedure was effectively unavailable to him because he had the opportunity to include his allegations against Dr. Zhang in his August 1, 2019, grievance as he threatened to do, which is further supported by his deposition testimony that he is familiar with the healthcare grievance process in the CDCR and has filed "quite a few" grievances.  (ECF No. 56-1 at 29-30.)

In sum, Plaintiff's admission that he did not file a 602-inmate healthcare grievance containing the allegations against Dr. Zhang upon which his Third Amended Complaint is based, despite having an opportunity to do so, knowledge of how to do so and a stated intention of doing so, coupled with the lack of evidence in the record that the headquarters' level response addressed those allegations, shows a lack of exhaustion of available administrative remedies.  Defendant is entitled to summary judgment with respect to exhaustion of administrative remedies and Plaintiff is not entitled to summary judgment on that issue.  *See* Fed.R.Civ.P. 56(c) (a party is entitled to summary judgment when they show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."); *Rhodes*, 621 F.3d at 1004 ("[T]he PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims.")  Furthermore, even if the headquarters' level response addressed and exhausted a claim that the discontinuation of morphine revealed an overlooked or overdue need for surgery attributable to Dr. Zhang's failure to order an MRI or a surgical consultation while he was Plaintiff's primary care physician, as discussed below, Defendant is also entitled to summary judgment on the merits of that claim.

1    Defendant Dr. Zhang's motion for summary judgment based on Plaintiff's failure to

2    exhaust available administrative remedies is **GRANTED** and Plaintiff's motion for

3    summary judgment on that issue is **DENIED**.

4    **IV.   Merits**

5          Both parties also seek summary judgment on the merits of Plaintiff's Eighth

6    Amendment claim that Dr. Zhang was deliberately indifferent to his serious medical need

7    for surgery by failing to order an MRI, refer him for surgery, or otherwise follow-up on the

8    surgical recommendation Plaintiff received while incarcerated at Kern Valley State Prison

9    in 2012.  Dr. Zhang contends the undisputed evidence shows his treatment of Plaintiff was

10   reasonable and in accordance with prison guidelines, and Plaintiff has at most shown a

11   difference of medical opinion regarding whether surgery was necessary.  (ECF No. 56 at

12   16-18.)  Dr. Zhang argues that while he was Plaintiff's primary care physician from 2014

13   to 2019, Plaintiff reported feeling well, did not have complaints, and only requested

14   occasional appointments because his prescribed morphine was controlling his pain.  (*Id*. at

15   16.)  He states that on the one occasion Plaintiff reported pain he prescribed nighttime pain

16   medication, ordered x-rays, and told him to follow-up as needed, and there is no evidence

17   Plaintiff ever requested an MRI, a neurological consultation, or surgery.  (*Id*. at 16-17.)

18         Plaintiff addresses only the exhaustion issue in his opposition to Defendant's

19   summary judgment motion (ECF No. 60) and Defendant argues in reply that Plaintiff does

20   not dispute Dr. Zhang was not deliberately indifferent.  (ECF No. 63 at 1.)  In his summary

21   judgment motion, however, Plaintiff argues that on June 26, 2012, it was recommended he

22   have surgery within two weeks, but he "was moved from prison to prison and was never

23   able to receive surgery."  (ECF No. 51 at 2.)  He contends that when he arrived at RJD in

24   April 2014, a nurse reviewed his records, noted that he had arm and shoulder pain, and

25   indicated he would receive a follow-up.  (*Id*.)  He contends Dr. Zhang was aware he needed

26   surgery as far back as July 22, 2014, when he prescribed Ibuprofen for pain, because: "It's

27   CDCR/RJD policy for any and all physician[s] before examining or prescribing pain

28   medication to review the inmate/patient record."  (*Id*. at 3.)  He alleges in his unverified

Third Amended Complaint that "Dr. Zhang-MD verbally informed me on countless of occasions that he personally felt that I didn't need any surgery to correct my neck, spine, and shoulder as opposed to Dr. Goyal, Dr. Casian, Dr. Santos, Dr. Waters, and the Chief Medical Doctor named Dr. Steven Roberts who all five strongly believed that I did in fact need corrective surgery for my neck, spine, and shoulder."[2]  (ECF No. 35 at 3.)

Plaintiff argues that although he was approved for surgery in 2012: "On many occasions, during medical exams (as required from chronic pain management program) the plaintiff [was] informed by the defendant, that he did not need surgery." (ECF No. 51 at 4.)  The only occasion Plaintiff identifies as having asked Dr. Zhang for a follow-up to the 2012 surgical recommendation is during their July 31, 2019, visit, where Plaintiff "verbally asked the defendant would he reconsider the surgery since he was denying plaintiff the return of his pain medication (morphine) (15mg back to 30mg)." (ECF No. 51 at 4.)  The progress notes for that visit state Plaintiff "appeared comfortable throughout the interview today without any signs of pain," but does not indicate he made a request for a surgical referral.  (ECF No. 56-2 at 64-67.)

### A.   Legal Standards

A defendant is entitled to summary judgment if he or she shows "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).   The moving party has the initial burden of showing summary

---

[2]   Because Plaintiff did not sign his Third Amended Complaint under penalty of perjury the Court is unable to consider any statements contained therein as evidence in opposition to the summary judgment motion.  However, because he signed his summary judgment motion under penalty of perjury to which he attached two declarations signed under penalty of perjury, to the extent the statements therein are within his personal knowledge they will be considered as evidence in opposition to Defendant's summary judgment motion.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct.")

judgment is proper by "showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To avoid summary judgment, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The Court may not weigh evidence or make credibility determinations, and any justifiable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id*. at 255. The nonmovant's evidence need only be such that a "jury might return a verdict in his favor." *Id*. at 257.

Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id*., quoting *Wilson*, 501 U.S. at 302-03. A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

**B.    Analysis**

With respect to the serious medical need prong of an Eighth Amendment claim, Plaintiff's surgery, which a doctor recommended and he eventually received, is sufficient to demonstrate a serious medical need. *See Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

"Th[e] second prong - defendant's response to the need was deliberately indifferent - is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff is required to prove that Dr. Zhang was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" by delaying or denying surgery or failing to order an MRI or follow-up on the 2012 surgical recommendation, and that Dr. Zhang actually "drew that inference." *Farmer*, 511 U.S. at 837; *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (a defendant must purposefully ignore or fail to respond to pain or medical needs which "caused substantial harm.") Medical malpractice fails to rise to the level of an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105 (inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim). "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell*, 763 F.3d at 1068.

Dr. Zhang states in his declaration that Plaintiff's medical records, in particular the portions attached to Dr. Zhang's declaration as exhibits 8 and 9, indicate that in 2012 a request for surgery was submitted on his behalf by his primary care physician at Kern

Valley State Prison, but surgery was not approved.  (Zhang Decl. ¶ 2, ECF No. 56-5 at 2; Exhs. 8-9, ECF No. 56-2 at 24-115.)  The medical notes indicate that Dr. Zhang first saw Plaintiff on October 17, 2014, that Plaintiff was a 34-year-old male with a history of spinal cord injury due to a 2006 motor vehicle accident which left him a paraplegic, that he was in a wheelchair due to an inability to use his legs, he reported feeling well, and "is currently taking morphine ER 30 m.g. b.i.d. for his chronic pain." (ECF No. 56-2 at 25.)  Dr. Zhang states that on July 31, 2019, he began tapering Plaintiff's morphine prescription down to 15 mg twice a day because the risk of continuing the prescription outweighed the benefits, as Plaintiff had been taking 30 mg of morphine twice a day for about five years which placed him at a risk of addiction but he was clinically stable and did not appear to be in any pain or discomfort.  (Zhang Decl. ¶ 3, ECF No. 56-5 at 2.)  Dr. Zhang's final visit with Plaintiff was on August 22, 2019, at which he ordered a routine drug serum test which showed no morphine in Plaintiff's system, and he immediately discontinued the morphine prescription.  (*Id*. ¶ 4, ECF No. 56-5 at 2-3.)  Dr. Zhang states that he was assigned to a new facility at RJD on September 1, 2019, and as of that date was no longer Plaintiff's primary care physician.  (*Id*.)  He states that: "I do not recall, and the medical records do not reflect, Plaintiff ever asking me for a surgical referral, MRI, or neurosurgical consultation." (*Id*.)

Plaintiff contends that in addition to his August 1, 2019, healthcare grievance complaining that Dr. Zhang had the day before ordered a reduction in his morphine, he submitted a Health Care Services Request form on August 6, 2019, stating that since the adjustment of his pain medication "my pain level has increased and I am not getting sleep nor am I able to move or get out [of] my bed without a paralyzing feeling in my spine, neck, and shoulder with stiffness and muscle weakness.  Hard time sleeping." (ECF No. 51 at 27.)  He attaches to the Third Amended Complaint an order dated October 15, 2019, by Dr. Goyal titled Request for Neurosurgery which states he "would like neurosurgical recommendation to determine if surgery would be indicated in patient who has multifactorial pain of the LUE and L. side of neck.  Pain is significantly worsened since

about one month when patient's chronic opioid therapy was discontinued." (ECF No. 35 at 9.)  Plaintiff presents an order dated January 17, 2020, by Dr. Casian titled Referral to Neurosurgery Evaluation containing the same determination that Plaintiff needed a follow-up on his past neurosurgical recommendation for surgery including anterior discectomy and cervical fusion. (*Id*. at 11.)  Plaintiff presents an order dated January 23, 2020, by Dr. Casian, titled Request for Neurosurgery, which states: "pain not improved with NSAIDs and Tylenol; patient only attended 1 session of physical therapy.  Morphine was discontinued after abnormal urine drug screen. . . . In the past, the patient was seen by neurosurgery that recommended anterior discectomy and cervical fusion.  He needs follow-up for reevaluation." (*Id*. at 9.)  Plaintiff also attaches the results of an MRI from August 4, 2020, which indicated: "C6-7 disc herniation with effacement the left lateral recess, spinal stenosis, neural foraminal stenosis, mass effect upon the spinal cord." (*Id*. at 14-16.) The only time he identifies as having requested surgery from Dr. Zhang was during their July 31, 2019, visit when his morphine prescription was reduced, but the progress notes for that visit state that he "appeared comfortable throughout the interview today without any signs of pain," and there is no indication in the notes that he asked for a surgical referral. (ECF No. 56-2 at 64-67.)  Plaintiff states that Dr. Zhang told him on many occasions he did not need surgery, and states in a declaration attached to his summary judgment motion that when he asked Dr. Zhang on July 31, 2019, why he was cutting his morphine dose in half, he said it was "due to opiate crisis and Medical Board (CDCR) expenses." (ECF No. 51 at 22.)  When Plaintiff asked him on August 22, 2019, why he was ignoring the 2012 surgical recommendation, "He told me that it was a long time ago and that I didn't need the surgery or a MRI." (*Id*. at 25.)

Plaintiff's contention that Dr. Zhang's determination that he did not need surgery even though other doctors thought he should have surgery does not support an Eighth Amendment deliberate indifference claim because it alleges a difference of opinion on the proper course of medical care or, perhaps, medical malpractice arising from Dr. Zhang's determination that surgery was unnecessary without ordering an MRI. *See Colwell*, 763

F.3d at 1068 ("A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."); *Jett*, 439 F.3d at 1096 (allegations of inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth Amendment violation); *Estelle*, 429 U.S. at 105 (inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim).

Rather, to avoid summary judgment, Plaintiff must show there is a triable issue showing Dr. Zhang was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed from not ordering an MRI or a surgical consultation or otherwise following-up on the 2012 surgical recommendation, and that he actually "drew that inference." *Farmer*, 511 U.S. at 837; *Wood*, 900 F.2d at 1334-35 (a defendant must purposefully ignore or fail to respond to pain or medical needs and the delay must have "caused substantial harm.") Plaintiff's medical records indicate surgery was denied after his 2012 surgical recommendation, and he comes forward with no evidence that he would have been provided surgery had Dr. Zhang followed-up with that recommendation while he was his primary care physician at RJD. Rather, the evidence shows Plaintiff was only reevaluated for surgery after his morphine prescription was terminated. According to Dr. Goyal's October 15, 2019, note, Plaintiff "was lost to follow-up [of the 2012 surgical recommendation] because he reports that he had been controlled on pain medication." (ECF No. 56-2 at 82.) The only time Plaintiff states he asked Dr. Zhang for a surgical referral is their July 31, 2019, visit when, in response to Dr. Zhang informing him his morphine was to be discontinued, Plaintiff asked, "can I at least get a follow-up with the neurosurgeon for my spine," to which he received a reply that: "He told me, I was ok and didn't need it." (ECF No. 51 at 22.) And when he asked Dr. Zhang on August 22, 2019, why he was ignoring the 2012 surgical recommendation: "He told me that it was a long time ago and that I didn't need the surgery or a MRI." (ECF No. 51 at 25.) Although a valid inference that Plaintiff repeatedly asked for surgery can be drawn

from Plaintiff's statement that Dr. Zhang told him on numerous occasions that he did not need surgery, that evidence shows Plaintiff and Dr. Zhang disagreed whether an MRI or a surgical consultation was necessary.  The evidence that surgery was denied after a prison doctor recommended it in 2012, and that Plaintiff was not reevaluated for surgery until 2019 after Dr. Zhang stopped being his primary care physician and in response to the discontinuation of morphine, does not support a finding Dr. Zhang was aware from 2014-2019 that Plaintiff had a need for surgery or that he actually drew an inference Plaintiff faced a substantial risk of serious harm from not having surgery.  Even if that evidence supports a claim that Dr. Zhang conceivably committed malpractice by deciding Plaintiff did not need surgery without ordering an MRI, or by controlling his pain with morphine for years while he was his primary care physician rather than determining if he needed surgery, it does not support an Eighth Amendment deliberate indifference claim.  *See Estelle*, 429 U.S. at 107 (holding that failure by prisoner's treating physician to adequately diagnose or treat disabling back injury and incapacitating pain by failing to order x-rays or additional diagnostic techniques or other forms of treatment "is a classic example of a matter for medical judgment" which does not constitute cruel and unusual punishment but is at most medical malpractice).

In sum, the undisputed evidence shows that in 2012 a prison doctor recommended Plaintiff have surgery but surgery was denied, he was transferred to RJD in 2014 where Dr. Zhang repeatedly told him he did not need surgery, he was not provided a follow-up on the 2012 recommendation until his morphine prescription was discontinued in 2019 and he reported his pain was no longer manageable, and he finally received a new surgical evaluation, and surgery, as a result of the discontinuation of his morphine prescription. Defendant has carried his initial burden on summary judgment by showing there is the absence of a genuine issue of material fact that Dr. Zhang was actually aware there was a substantial risk of serious harm to Plaintiff from not ordering an MRI or a surgical consultation or to otherwise follow-up on the 2012 surgery recommendation while he was Plaintiff's primary care physician from October 17, 2014, to September 1, 2019.

1   Plaintiff has not identified a triable issue that Dr. Zhang was aware that his failure
2   to order an MRI, a surgical consultation or otherwise follow-up on the 2012 surgical
3   recommendation while he was Plaintiff's primary care physician presented a substantial
4   risk of serious harm to Plaintiff or that Dr. Zhang deliberately and knowingly disregarded
5   such a risk.  Rather, Plaintiff relies on a 2012 recommendation for surgery which was
6   denied, and recommendations for surgical evaluation made after Dr. Zhang stopped being
7   his primary care physician and after the discontinuation of his morphine prescription
8   revealed a need for surgery to address pain which had been controlled by morphine while
9   Dr. Zhang was his primary care physician.  Plaintiff has failed to carry his burden on his
10  summary judgment motion or in opposing Defendant's summary judgment motion.

11      Accordingly, Plaintiff's motion for summary judgment on the merits of his Eighth
12  Amendment claim for deliberate indifference to his serious medical needs against Dr.
13  Zhang presented in the Third Amended Complaint is **DENIED** and Defendant's cross-
14  motion for summary judgment on the merits of that claim is **GRANTED**.

15      **D.    Qualified immunity**

16      Defendant claims entitlement to qualified immunity on the basis that Plaintiff does
17  not have a clearly established right to his preferred treatment option, and prison doctors are
18  immune from liability arising from a difference of medical opinion with an inmate.  (ECF
19  No. 56 at 19-20.)  Because Defendant is entitled to summary judgment on other grounds,
20  the Court declines to address qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201
21  (2001) ("If no constitutional right would have been violated were the allegations
22  established, there is no necessity for further inquiries concerning qualified immunity.");
23  *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to
24  resolving cases in which the defense of qualified immunity is raised is to determine first
25  whether the plaintiff has alleged the deprivation of a constitutional right at all.")

26  **III.   Plaintiff's Motion for Appointment of Counsel**

27      Plaintiff states he is recovering from surgery and unable to effectively use his right
28  hand to write or type documents, and without the assistance of counsel he will be unable

to draft any necessary legal documents.  (ECF No. 59 at 1, 3.)  There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment).  Such exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity.  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Plaintiff has demonstrated he is capable of articulating the facts and circumstances relevant to his claims.  *Agyeman*, 390 F.3d at 1103.  In addition, as is clear from the discussion of the merits of his claim, there is no indication he would benefit from the assistance of counsel.  Plaintiff's motion for appointment of counsel is **DENIED**.

## IV.   Conclusion and Orders

Based on the foregoing, **IT IS ORDERED** that:

1.     Plaintiff's motion for appointment of counsel [ECF No. 59] is **DENIED**.

2.     Plaintiff's motion for summary judgment [ECF No. 51] is **DENIED**.

3.     Defendant Dr. Zhang's Motion for summary judgment [ECF No. 56] is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of Defendant Dr. Zhang.

**IT IS SO ORDERED.**

Dated:  February 10, 2022

Hon. Anthony J. Battaglia
United States District Judge